

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 2 4 2020

JAMES W. McCORMACK, CLERK
By:_____
　　　　　　　　　　　DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                                             PLAINTIFF

v.                                       NO. 4:20CV 307-KGB

$332,057.00 IN U.S. CURRENCY                                                         DEFENDANT

## VERIFIED COMPLAINT *IN REM*

The United States of America, by Cody Hiland, United States Attorney for the Eastern District of Arkansas, and Assistant U.S. Attorney Cameron C. McCree and Amanda Jegley, for its verified complaint *in rem* against the above-described property, states:

### NATURE OF THE ACTION AND DEFENDANTS *IN REM*

1.　This is an action to forfeit to the United States $332,057.00 in U.S. Currency seized during a September 10, 2019, traffic stop ("the Defendant Currency").

2.　This action is governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

### JURISDICTION AND VENUE

3.　This Court has subject-matter jurisdiction over this action under Title 28, United States Code, Sections 1345 and 1355(a).

4.　This Court has *in rem* jurisdiction over the Defendant Currency under Title 28, United States Code, Section 1355(b).

5.　Venue is proper in the Eastern District of Arkansas under Title 28, United States Code, Sections 1355(b)(1) and 1395 because the Defendant Currency was seized in this District.

### STATUTORY BASIS FOR FORFEITURE

6.　The Defendant Currency is subject to forfeiture under Title 21, United States Code,

This case assigned to District Judge ___Baker___
and to Magistrate Judge ___Ray___

Section 881(a)(6) because it constitutes (1) money intended to be furnished in exchange for a controlled substance; (2) proceeds traceable to such an exchange; and (3) money used and intended to be used to facilitate a violation of the Controlled Substances Act.

## FACTUAL BASIS FOR FORFEITURE

7. The Arkansas State Police ("State Police") seized the Defendant Currency from Sung Won Kim during a September 10, 2019, traffic stop.

8. On September 10, 2019, at approximately 7:00 a.m., State Police Trooper Andrew May stopped a silver 2018 Nissan Rogue after he observed a traffic violation.

9. The traffic violation occurred near the 178 mile marker of Interstate 40 in Lonoke County, Arkansas.

10. The Nissan Rogue was being driven by Sung Kim.

11. Sung Kim's spouse, Hyun Jung Kim, was the sole remaining passenger in the SUV.

12. Trooper May told Sung Kim that he stopped the Nissan Rogue because Trooper May saw Sung Kim drive over the fog line.

13. After being informed of the reason for the stop, Sung Kim attributed crossing the fog line to his sneezing while driving.

14. At Trooper May's request Sung Kim provided Trooper May with a copy of his driver's license and rental agreement.

15. The rental agreement showed that the vehicle was rented on September 9, 2019 and that the rental agreement was for one way to Las Vegas.

16. Trooper May noticed that when Sung Kim handed him the paperwork, his hands were visibly shaking.

17. Trooper May took Sung Kim back to his patrol car while he ran the information on

the vehicle and performed background checks on the couple.

18. Sung Kim told Trooper May his passenger was his wife.

19. Sung Kim also said that he and his wife left their home in Georgia around midnight the night before.

20. Sung Kim reported that he and his wife have two children and that the children were still in school so they were going to remain at home while their parents were on their trip.

21. Sung Kim said that he and his wife rented the Rogue to drive to Las Vegas.

22. Sung Kim indicated that he would like to stay in Las Vegas for a week, but they would probably only stay a couple of days.

23. Sung Kim said that the trip was a honeymoon surprise for his wife.

24. When asked how long he and Hyun Kim were married before taking their honeymoon vacation, Sung Kim acknowledged they had been married more than 20 years.

25. Sung Kim's responses were made nervously.

26. When Trooper May inquired about the one-way rental, Sung Kim said that he and his wife were going to fly home from Las Vegas, but he also indicated that they did not yet have tickets for the flight.

27. Sung Kim also had difficulty giving an explanation of where the couple would stay while in Las Vegas, indicating that they might be staying in a hotel or might be staying with friends.

28. Sung Kim also said that he and his wife only had $200.00 on them.

29. Trooper May ran a background check on Sung Kim that revealed a 2014 charge for possession of marijuana.

30. Trooper May went back out to the vehicle to speak with Hyun Kim because he did not yet know her name and wanted to identify her.

31. Hyun Kim told Trooper May that she and her husband were going to be in Las Vegas for a week.

32. Hyun Kim also indicated that they might fly home or might drive the rental vehicle.

33. The Trooper May asked Sung Kim for consent to search the SUV, and Sung Kim refused, so shortly thereafter, Trooper May called for a dog to conduct a sniff of the vehicle.

34. In the interim, Trooper May ran a background check on Hyun Kim and continued to converse with Sung Kim.

35. Sung Kim continued answering Trooper May's questions, but he was not volunteering any information.

36. One of the matters Trooper May explored was Sung Kim's history of marijuana use, and Sung Kim assesrted that he never used the drug.

37. Trooper May then asked Sung Kim about a prior arrest for marijuana possession, and Sung Kim acknowledgd the arrest but he contended that the offense involved a small quantity of marijuana and that the drugs belonged to someone else who had been in the vehicle.

38. When further questioned about his travel plans, Sung Kim said that he and Hyun Kim had not yet bought the tickets to fly home because they were not sure whether they would stay in Las Vegas for two days or three.

39. Sung Kim later said that his wife or their friends in Las Vegas might have already purchased the airline tickets.

40. When Trooper Mark Blackerby arrived, he walked his canine partner, Raptor, around the SUV.

41. Raptor was properly trained and certified to detect an odor of marijuana, methamphetamine, cocaine, and heroin.

4

42. Raptor alerted to an odor of narcotics on the SUV.

43. A subsequent search of the SUV uncovered the Defendant Currency in two duffel bags and a backpack in the rear of the SUV.

44. The money was vacuum sealed.

45. At that point, Sung Kim said that a friend gave him the money to transport to Las Vegas and that he took custody of the money the day before the traffic stop.

46. Sung Kim said that he thought he was only carrying around $10,000.00.

47. Sung Kim said that he had been paid $500.00 to drive the bags to Las Vegas.

48. Also uncovered during the search were three cellular devices, namely: a rose-colored iPhone, Model# A1778 with an unknown serial number ("Device 1"), a black iPhone, Model# A1778 with an unknown serial number ("Device 2"), and a rose-colored iPhone with an unknown model and serial number ("Device 3").

49. Following the discovery of the money, the State Police sought investigative assistance from the Drug Enforcement Administration ("DEA").

50. DEA Task Force Officer ("TFO") Stephen Briggs responded and spoke with Sung and Hyun Kim.

51. Sung Kim said that he worked in Georgia as an optician.

52. Sung Kim also told TFO Briggs that Devices 1 and 2 were his cellular devices.

53. Sung Kim then said that he did not wish to submit to an interview and that he wanted to speak with an attorney.

54. After invoking his right to counsel, however, Sung Kim said, without prompting, that he did not know anything and that he was doing a favor for a friend.

55. Hyun Kim agreed to speak with law enforcement.

56. Hyun Kim identified Device 3 as her cellular phone.

57. Hyum Kim said that she was a stay at home mother.

58. Hyum Kim said that she and her husband were on their way to Las Vegas to celebrate their wedding anniversary.

59. Hyun Kim said that she did not know there was any money in the car and that she did not know where Sung Kim obtained the money.

60. Hyun Kim expressed doubt that Sung Kim earned the money as an optician.

61. In the end, the State Police seized the money.

62. Later, the Defendant Currency was taken to the bank and counted.

63. The bank's count showed that the money was $332,057.00 in U.S. currency.

64. The bank recorded the denominations of the money, and those records showed that the Defendant Currency included 47 $1.00 bills, 954 $5.00 bills, 1,369 $10.00 bills, 13,730 $20.00 bills, 169 $50.00 bills, and 305 $100.00 bills.

65. In the days following the seizure, the DEA adopted the case and conducted an administrative forfeiture proceeding regarding the Defendant Currency.

66. After obtaining search warrants, the DEA examined Devices 1, 2, and 3.

67. Device 1 included messages that TFO Briggs, an experienced law enforcement officer, interprets as involving the sale of marijuana and the manufacture of crack cocaine.

68. In late November 2019, Sung Kim challenged the DEA's administrative forfeiture proceeding by submitting a claim.

69. Sung Kim's claim made no mention of the friend or business arrangement he mentioned to law enforcement on the date of the seizure.

WHEREFORE, the United States prays that the Court issue an arrest warrant *in rem* as

provided by Supplemental Rule G(3)(b), which the United States will execute on the Defendant Currency as provided by Title 28, United States Code, Section 1355(d) and Supplemental Rule G(3)(c); order the Defendant Currency forfeited to the United States; and award to the United States all other proper relief.

>                               CODY HILAND
>                               United States Attorney
>
>                       By: _____
>                               CAMERON C. McCREE (2007148)
>                               AMANDA JEGLEY (2010045)
>                               Assistant U. S. Attorneys
>                               P. O. Box 1229
>                               Little Rock, Arkansas 72203
>                               (501)340-2600
>                               Cameron.McCree@usdoj.gov
>                               Amanda.Jegley1@usdoj.gov

## VERIFICATION

I, Stephen Briggs, verify and declare under penalty of perjury that (1) I am a Task Force Officer with the Drug Enforcement Administration; (2) I have read the foregoing verified complaint *in rem* and know its contents; and (3) the matters contained in the verified complaint *in rem* are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are (1) my participation in this investigation, (2) information learned from oral and written reports prepared by other law enforcement officers, and (3) information learned from inquiries and analysis of records performed by a participating financial investigator (4) information from witnesses, physical surveillance, seized contraband, and other physical evidence.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: March 24, 2020.

STEPHEN BRIGGS, Task Force Officer
Drug Enforcement Administration