IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                                  PLAINTIFF

v.                              CASE NO. 4:20CV00307 KGB

$332,057.00 IN U.S. CURRENCY                                              DEFENDANT

SUNG KIM                                                                  CLAIMANT

**SUNG WON KIM'S ANSWERS TO
THE UNITED STATES OF AMERICA'S 1ST SET OF RULE G(6)
SPECIAL INTERROGATORIES DIRECTED TO CLAIMANT SUNG KIM**

Sun Won Kim submits the following answers to the United States of America's first set of Rule G(6) special interrogatories.

**SPECIAL INTERROGATORY NO. 1:** State your current and all prior names (including aliases and nicknames), date and place of birth, Social Security number, current home address, current business addresses, the address of every place you have maintained as a permanent residence during the period identified in response to Special Interrogatory No. 3, and the address of every place you have worked during the same period. In your statement, specify the months and years that you lived or worked at each address.

**ANSWER TO SPECIAL INTERROGATORY NO. 1:**

1. The only names I have ever been known as are my birth name, which is Sung Won Kim and my chosen American name or nickname, which is David Kim.

2. I was born on ▇▇▇▇▇ 1974 in Seoul, Republic of Korea (South Korea).

3. My Social Security Number is ▇▇▇▇▇

4. My address since my marriage in 2000 has been 3479 Enfield Way Duluth, GA 30096, as it remains to this day.

5. This is the same address used for my current business address, from which I work restoring old, collectible cars. I have used this address for this purpose from 2017

through present.  From 1998 through 2005 I owned Kartec Motoring at 5726 Buford Hwy Doriville, GA 30340, where I strived to operate a business involving automotive performance, fabrication, modification, repairs, and accessories.  From 2006 through 2009 I worked in construction at various addresses.  From 2008 through 2016 I worked at a relative's optometry shop (Italy Optical), whose address is 5141 Buford Hwy, Doriville, GA 30340.

**SPECIAL INTERROGATORY NO. 2:**  Identify the recordings and documents that you contend support your response to Special Interrogatory No. 1 and identify the custodian of any such records or documents that you identify in response to this request. Your identification of the custodian should include the custodian's address, phone number, and email address. Alternatively, rather than identifying such records and documents and their custodians, you may produce copies of the records and documents.

**ANSWER TO SPECIAL INTERROGATORY NO. 2:**

1. Attached can be found copies of my Georgia driver's license, the first page of my 2019 1040 Income Tax Return to establish income for the year in question, as well as to establish evidence of my SSN, as the card has been recently lost and not yet replaced. My attorney has the complete 1040 for 2019.  This will also establish my current address, as will copies of utility bills provided under Special Interrogatory No. 10.

**SPECIAL INTERROGATORY NO. 3:**  Describe the nature of your interest in the Defendant Currency. In your description, state (1) how much of the Defendant Currency belongs to you; (2) the names, address, phone number, and email address of the people who have an interest in the rest of the money; and (3) the amount of each owner's interest. Explain how you earned or otherwise acquired the Defendant Currency and the period over which you earned or otherwise acquired the money.

**ANSWER TO SPECIAL INTERROGATORY NO. 3:**

1. The currency that was seized from my possession, the actual amount of $360,000 (three hundred sixty thousand Dollars) essentially belongs to me and my wife, Hyun Kim, who was with me when it was so shockingly taken from us.  However, it is more complex than that, as significant sums were entrusted to us by family during the recent year(s) prior to this incident.  It is not as simple as just a gift, and it's not inheritance, either.  It was placed in our custody under stipulation of an understanding that we manage it, try to make it grow through business, and use it to spread support throughout the families later.  A significant amount of the money was also a combination of our life savings from both during the past 20 years of marriage and from even before that time.  Upon marrying, we received marriage gifts from various friends and relatives in cash, as is customary in all Asian cultures.  We each came into the marriage with around $25-30,000 (twenty-five to thirty thousand Dollars-each), which is a sum of fifty to sixty thousand Dollars that we had collectively earned prior to marrying, and as proceeds from working.  Upon marrying we received cash gifts that amounted to around $25,000 (twenty-five thousand Dollars).  That is around $85,000 (eighty-five thousand Dollars) that we had amassed 20 years ago, and succeeded in retaining the vast majority of throughout our marriage, and also adding to it, when we could, anywhere from five to ten thousand Dollars each year that we have been married.  By 2015 my wife and I easily had approximately $220,000 (two hundred twenty thousand Dollars) saved, in cash, in our home, in a safe.

2. Around New Year of 2018, my father, a Christian preacher and successful investor, knew that I was trying hard to follow my dream of buying, improving, and selling classic, custom cars, but was having a rough time of it because the overhead is so high. He visited me and placed in my custody $150,000 (one hundred fifty thousand Dollars) in order that I might be better able to succeed at my dream. This was all in cash, which,

3

again, is completely normal in our culture. We don't leave our money to banks (aside from small deposits to cover checks written for recurring monthly bills). Unfortunately, my father passed away on September 18 of 2018, so he cannot confirm this. However, my mother, his wife, can probably substantiate that this happened, but I don't know if she knows the exact amount between a father and his son. She would expect it to be significant, though. Her name, address, and phone number are as follows:

Hyo Chul Chong (speaks Korean only)

███████████████████ Laurenceville, GA 30045

Phone Number: ███████████ She does not use email.

3. My wife's father, who lives in Korea, heard about this and also made a similar gesture. A few months after my father visited, he instructed his son (my wife's brother) to have a close friend of his in America deliver cash to us via my wife. We don't know this man but he did business with my father in law for years, and the arrangement was made without question. The amount was $60,000 (sixty thousand Dollars), offered with the same type of stipulations and so forth. There would not be a written contract between parent and child in our culture. My wife's father is suffering now from onset of Alzheimer's Disease, but her brother's name and contact information, in Korea, is provided as follows:

Yong Joon Lee (speaks Korean only)

Kyung Gi Do Kyang Ju Si Hwe Duk Dong ████████████████

Phone number: ███████████

Email Address: ███████████

4. I would also point out that the amount of money taken from us by what we now know to have been law enforcement, was precisely $360,000 (three hundred sixty thousand Dollars), NOT the $332,000 and some odd fifty-seven Dollars as reported to the court.

We had the money sealed and distributed in three bags, which represented three categories: 1) Money to spend on high dollar cars that may not have sold at the previous month's Las Vegas Supershow (which I knew to track and source via Black Magic Hydraulics in Las Vegas, as well as other listings), 2) Money to spend in Las Vegas throughout several weeks on our first major celebration of our coming anniversary, and 3) Money to gamble with using legal known advantage play, as well as buying new fashions, etc. This bag also included money from home that we didn't intend to spend, but didn't feel comfortable leaving at home for so long.

5. Also, separating the money into 3 bags served the purpose of protecting the bulk if one bag were to have been lost or stolen. I was advised to seal the money by a friend because I was told that it would condense and organize it. I don't know if dogs can smell through it though I would think they can; but I was told by the police officer that his dog smelled drugs in my car. There is no way that was true, as the facts did bear out.

**SPECIAL INTERROGATORY NO. 4:** Identify the recordings and documents that you contend support your response to Special Interrogatory No. 3 and identify the custodian of any such records or documents that you identify in response to this request. Your identification of the custodian should include the custodian's address, phone number, and email address. Alternatively, rather than identifying such records and documents and their custodians, you may produce copies of the records and documents.

**ANSWER TO SPECIAL INTERROGATORY NO. 4:**

1. There really is not much documentation to substantiate any of these plans as we were just being spontaneous for once in our lives. The only thing we had done before we were blocked from a chance to enjoy our anniversary was that we had rented a car by the full week. We planned to exercise our option to keep renewing it weekly, for as

many weeks as we needed the vehicle. I may or may not still have that contract available; if I can find it then it will be attached. Otherwise, there will be attached a copy of the credit card statement showing the rental car transaction. We did not reserve any hotel rooms because we wanted to choose where we would stay when we got there, and planned to switch places from time to time at our leisure.

**SPECIAL INTERROGATORY NO. 5:** Explain how the Defendant Currency was delivered to you and the reason for the delivery. If you received any portion of the Defendant Currency by check, money order, or other financial instrument, identify the nature of the financial instrument, the name of the payor and payee, the amount of the instrument, the approximate date on which the instrument was written and cashed, and the account into which the funds were deposited and from which they were later withdrawn.

**ANSWER TO SPECIAL INTERROGATORY NO. 5:**

1. The full nature of our accrual of the funds is detailed explicitly in Special Interrogatory No. 3; all transactions toward total sum accrual was in cash, except for any earnings from a decade or more ago, for which there are no longer records. There is attached copies of W2's from my having worked at Italy Optical, but all that I am able to find are from 2014 and 2016.

**SPECIAL INTERROGATORY NO. 6:** Identify the recordings and documents that you contend support your response to Special Interrogatory No. 5 and identify the custodian of any such records or documents that you identify in response to this request. Your identification of the custodian should include the custodian's address, phone number, and email address. Alternatively, rather than identifying such records and documents and their custodians, you may produce copies of the records and documents.

**ANSWER TO SPECIAL INTERROGATORY NO. 6:**

1. Again, the full nature of this Interrogatory is handled in Interrogatory No. 3.

**SPECIAL INTERROGATORY NO. 7:** Identify all income, government benefits, investments, inheritances, gifts, and other monies you used to pay your living expenses during the period identified in response to Special Interrogatory No. 3. State the source of the income, government benefits, investments, inheritances, gifts, and other monies and whether you reported the income, government benefits, investments, inheritances, gifts, and other monies to the Internal Revenue Service and any other appropriate state or federal taxing agency. If you are claiming any portion of the Defendant Currency on behalf of a third party, provide the same information for all such third parties.

**ANSWER TO SPECIAL INTERROGATORY NO. 7:**

1. Our income for the time period referred to was sourced from working by either buying and selling car parts at flea markets, and selling the occasional profitable car during 2019, and is reflected on that year's 1040, Schedule 1. Special Interrogatory No. 3 was answered with detail regarding monies we had saved and accrued during our marriage, and from our fathers. They permitted us to use whatever we needed to cover household expenses, if ever necessary.

2. We were not nor have not been on any government assistance programs, and held no investments.

**SPECIAL INTERROGATORY NO. 8:** Identify the recordings and documents that you contend support your response to Special Interrogatory No. 7 and identify the custodian of any such records or documents that you identify in response to this request. Your identification of the custodian should include the custodian's address, phone number, and email address. Alternatively, rather than identifying such records and documents and their custodians, you may produce copies of the records and documents.

**ANSWER TO SPECIAL INTERROGATORY NO. 8:**

1. Our 2019 1040 Income Tax Return is included to show income from that year, which was atypically low.

**SPECIAL INTERROGATORY NO. 9:** Identify your recurring expenses for the period identified in response to Special Interrogatory No. 3. Recurring expenses would include monthly utilities, insurance costs, tax expenses, and other periodic payments.

**ANSWER TO SPECIAL INTERROGATORY NO. 9:**

1. Monthly recurring expenses are closely approximated as follows:
    a. Mortgage (including property tax);   $1,100
    b. Electricity:                         $140
    c. Gas (home):                          $50
    d. Cell Phones:                         $270
    e. Internet/TV                          $120

**SPECIAL INTERROGATORY NO. 10:** Identify the recordings and documents that you contend support your response to Special Interrogatory No. 9 and identify the custodian of any such records or documents that you identify in response to this request. Your identification of the custodian should include the custodian's address, phone number, and email address. Alternatively, rather than identifying such records and documents and their custodians, you may produce copies of the records and documents.

**ANSWER TO SPECIAL INTERROGATORY NO. 10:**

1. Copies of bills payable that would exemplify or estimate the month of September, 2019 are included as attachments.

**SPECIAL INTERROGATORY NO. 11:** State the date you started working. If you have ever worked a salaried position, state (1) the highest salary you have earned during your career, (2) the dates you were paid that salary, and (3) the employer who paid you. If you have ever worked for an hourly wage, state (1) the highest hourly wage you have earned during your

career, (2) the dates you were paid at that hourly wage, and (3) the employer who paid you. Your identification of the employer should include the employer's address, phone number, and email address. If you have ever been self-employed, state (1) the highest income you earned during your self employment, (2) the dates you earned that income, (3) the nature of the business activity in which you were engaged, and (4) names under which you operated while self employed.

**ANSWER TO SPECIAL INTERROGATORY NO. 11:**

1. I started working in 1989/90.  The highest salaried job I had was while working at Italy Optical.  I was paid approximately $500 per week, from 2008 through 2016.  Their address is 5141 Buford Hwy, Doriville, GA 30340, phone number (770)452-7030, no email address known.  During that time, I also sold items on EBay and at the flea markets to supplement my income.

2. From 1998 through 2005 I owned Kartec Motoring at 5726 Buford Hwy Doriville, GA 30340.  My self-employment earnings ranged from $50,000 to $60,000 per year at this business.  My business involved automotive performance, fabrication, modification, repairs, and accessories, with the occasional sale of a vehicle.

3. From many years before owning that business and all the way through to present day, I have always bought certain specialty items in bulk and sold them at flea markets and then on EBay.  Depending on the year and my other business activities, this would make me anywhere from three thousand Dollars to as much as six or seven thousand Dollars per year.  The average would probably be somewhere around five thousand Dollars per year over 25 plus years at these activities.

4. I also did general home construction work to generate income intermittently between 2006 and 2016, during times where other income pursuits were not as profitable.  Some years I would make $25,000 and in good years with a lot of work, of which there were

a few, I made as much as $50,000. This work was done for a contractor friend, with whom I no longer associate and do not know where or if he currently operates.

**SPECIAL INTERROGATORY NO. 12:** Identify the recordings and documents that you contend support your response to Special Interrogatory No. 11 and identify the custodian of any such records or documents that you identify in response to this request. Your identification of the custodian should include the custodian's address, phone number, and email address. Alternatively, rather than identifying such records and documents and their custodians, you may produce copies of the records and documents.

**ANSWER TO SPECIAL INTERROGATORY NO. 12:**

1. With 25 plus years of working, the only documentation possible is any pay information from the Optometrist position, as the construction contractor did not keep accurate records and my Kartec business is long gone in history. All self-employment earnings would have been or are reflected in tax returns. A tax return and W2 from Italy Optometry have been already attached.

**SPECIAL INTERROGATORY NO. 13:** Explain why you told Trooper Andrew May that you were transporting the bags containing the Defendant Currency for a third party.

**ANSWER TO SPECIAL INTERROGATORY NO. 13:**

1. Whatever I said to Trooper May would have been within a combination of my confusion over the complexities with the monies comingled from my father and father in law, mixed with the fact that I was scared to death that this was possibly not a real Law Enforcement Officer and that we might be robbed and killed for that money. I have been pulled over by fake police before, and the way Trooper May raced up next to my window, dropped back, and pulled us over was exceedingly alarming. He had no cause to pull me over, I was not swerving as he claimed, and I don't know why he did. Short of profiling us for something I don't understand, I don't know why he pulled

Case 4:20-cv-00307-KGB   Document 30-2   Filed 04/29/21   Page 11 of 15

me over and I don't know why he pressured me to allow a search, which I respectfully did not. I don't know why he made us wait an hour for a "drug dog" to respond, and I don't know why this dog they brought only did a standing alert after its handler slapped its hindquarter. I don't know how it smelled drugs when there were none. I truly hope the dash cameras show what I just contended. All I know is that we were stunned, scared as in fear for our lives throughout the entire ordeal, and I may have wanted him to know that someone out there (my wife's father and brother) knew that we were traveling with cash, and that we would be missed and inquired about if we went missing along that silent stretch of road. I was completely confused by the whole ordeal and we were both in fear by his intimidations. Later we were handcuffed and brought to some small office somewhere, against our will, where they asked us questions but never once were we told that we were under arrest or read our Miranda Rights before questioning. Included in the attachments is another statement I wrote to the same effect.

**SPECIAL INTERROGATORY NO. 14:** Identify the recordings and documents that you contend support your response to Special Interrogatory No. 13 and identify the custodian of any such records or documents that you identify in response to this request. Your identification of the custodian should include the custodian's address, phone number, and email address. Alternatively, rather than identifying such records and documents and their custodians, you may produce copies of the records and documents.

**ANSWER TO SPECIAL INTERROGATORY NO. 14:**

1. I believe this interrogatory has no relevance.

**SPECIAL INTERROGATORY NO. 15**  If you are claiming that the Defendant Currency belongs to a third party (whether in whole or in part), state the name of such third party, explain why you were in possession of property belonging to a third party, describe your

authority to act on behalf of the third party, and identify the date on which you took possession of the property from the third party.

**ANSWER TO SPECIAL INTERROGATORY NO. 15:**

1. Anything relating to a possible third party interest has been fully explained with full detail in both Interrogatories Nos. 3 and 13. The money taken from us belonged to me and my wife, with the understanding that a good portion of it was granted by our fathers toward prospering and spreading that prosperity throughout the families. The contention of Trooper May regarding my statement while stunned under duress was completely misconstrued by Trooper May.

**SPECIAL INTERROGATORY NO. 16:** Identify the recordings and documents that you contend support your response to Special Interrogatory No. 15 and identify the custodian of any such records or documents that you identify in response to this request. Your identification of the custodian should include the custodian's address, phone number, and email address. Alternatively, rather than identifying such records and documents and their custodians, you may produce copies of the records and documents.

**ANSWER TO SPECIAL INTERROGATORY NO. 16:**

1. I believe this interrogatory has no relevance, aside from what has already been explained in detail throughout the other named Interrogatories.

**SPECIAL INTERROGATORY NO. 17:** Identify all persons you know or believe to have information or documents that support or refute your assertion that you have an ownership interest in the Defendant Currency. In your response, identify the substance of the information you anticipate that the individual can provide and state their address, phone number, and email address.

**ANSWER TO SPECIAL INTERROGATORY NO. 17:**

1. Below are listed any and all persons, with contact information, who should have knowledge that supports our (mine and my wife's) assertion of ownership interest in the $360,000 (three hundred sixty thousand Dollars) seized from our possession in relation to this case, to include those already mentioned and exclude any minors:

    a. Moo Chan Chong (deceased); my father

    b. Hyo Chul Chong; ▓▓▓ Laurenceville, GA 30045; ▓▓▓

    c. Yong Joon Lee; Kyung Gi Do Kyang Ju Si Hwe Duk Dong ▓▓▓ South Korea; ▓▓▓ ; ▓▓▓

    d. Eddie Kim; 3479 Enfield Way Duluth, GA 30096; ▓▓▓ ; ▓▓▓

    e. Over the years there have been several close friends from time to time who would have known that it is normal for us to keep large sums of cash secured at home, though they wouldn't necessarily know the amounts. Most of these people I have lost contact with over the past decade, and cannot use them as witnesses.

    f. I would anticipate with every measure of confidence that each of the named people could speak to some knowledge confirming that my wife and I have always held our financial resources in cash, at home. The only divergence could possibly be that each of them would guess a different amount because none would know the exact amount, but they would speak to it as being from many hundreds of thousands of Dollars to possibly as much as a million Dollars.

**SPECIAL INTERROGATORY NO. 18:** Identify the recordings and documents that you contend support your response to Special Interrogatory No. 17 and identify the custodian of any such records or documents that you identify in response to this request. Your identification of the custodian should include the custodian's address, phone number, and email

address. Alternatively, rather than identifying such records and documents and their custodians, you may produce copies of the records and documents.

**ANSWER TO SPECIAL INTERROGATORY NO. 18:**

1. I believe this interrogatory has no relevance.

**VERIFICATION**

I swear, under penalty of perjury, that the answers in this document are true to the best of my knowledge.

---

SUNG WON KIM
3479 Enfield Way
Duluth, Georgia 30096
(404) 940-7961
TemperImpala64@yahoo.com

**CERTIFICATE OF SERVICE**

I certify that on January 8, 2021, I served a copy of these answers to the United States of America's first set of special interrogatories by electronic mail on the attorneys listed below.

Assistant U.S. Attorney Cameron McCree
Cameron.McCree@usdoj.gov

Assistant U.S. Attorney Amanda Jegley
Amanda.Jegley1@usdoj.gov

---

SUNG WON KIM

custodian should include the custodian's address, phone number, and email address. Alternatively, rather than identifying such records and documents and their custodians, you may produce copies of the records and documents.

**ANSWER TO SPECIAL INTERROGATORY NO. 18:**

1. I believe this interrogatory has no relevance.

## VERIFICATION

I swear, under penalty of perjury, that the answers in this document are true to the best of my knowledge.

*[signature]*

SUNG WON KIM
3479 Enfield Way
Duluth, Georgia 30096
(404) 940-7961
TemperImpala64@yahoo.com

## CERTIFICATE OF SERVICE

I certify that on January 8, 2021, I served a copy of these answers to the United States of America's first set of special interrogatories by electronic mail on the attorneys listed below.

Assistant U.S. Attorney Cameron McCree
Cameron.McCree@usdoj.gov

Assistant U.S. Attorney Amanda Jegley
Amanda.Jegley1@usdoj.gov

*[signature]*